IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARY JORDAN, et al.,**            CASE NO. 3:21 CV 1233

    Plaintiffs,

    v.                                JUDGE JAMES R. KNEPP II

**CITY OF TOLEDO, et al.,**

    Defendants.                      **DISMISSAL ORDER**

### INTRODUCTION

Currently pending before the Court is Plaintiff Jerome Williams's Amended Complaint. (Doc. 29). Also pending are two motions for extension of time signed by Mary Colbert, who asserts she is the executor of Plaintiff Mary Jordan's Estate to continue the case. (Docs. 32, 38). For the reasons set forth below, the Court *sua sponte* dismisses Plaintiff Williams's Amended Complaint, dismisses Plaintiff Jordan's claims as raised in the original complaint without prejudice for failure to prosecute, and denies as moot all other pending motions in this case.

### BACKGROUND

This case was originally jointly filed by Plaintiff Williams and his grandmother, Plaintiff Jordan. *See* Doc. 1. Therein, Plaintiffs brought claims against the City of Toledo, the Toledo Police Department, the Chief of the Toledo Police Department, and several officers and detectives. These claims were based upon a purportedly unlawful September 2019 search of Plaintiff Jordan's backyard / back porch at 2472 Lawrence, Toledo, Ohio, that resulted in the discovery of bullet shell casings. *Id.* at ¶ 14. Plaintiffs then asserted Defendants used that unlawfully-obtained evidence to obtain a search warrant for the residence at 2472 Lawrence. *Id.*

Plaintiffs asserted the Affidavit in support of the search warrant was based upon "falsehoods" and upon the "unlawfully obtained evidence – collected in violation of [the] Fourth Amendment to the United States Constitution." *Id.* at ¶¶ 22-24. Specifically – in addition to disputing the legality of the backyard search – Plaintiffs disputed the Affidavit's statements that Williams had previously admitted to a detective that he was a Lawrence Blood Villain gang member, that Williams had been observed at his residence with other members of the Lawrence Blood Villains, and that Williams was previously involved in a shooting incident in May 2019. *Id.* at ¶ 24.

Plaintiffs asserted that the subsequent search of the residence was performed in a destructive manner. They alleged the front door was broken down, over ten windows were broken out, lamps and mirrors were broken on the floor, the sink and toilet were badly damaged, and furniture was destroyed. *Id.* at ¶¶ 15-20. Plaintiffs asserted that the police subsequently contacted personnel from the Land Bank to designate the home as unfit for habitation and scheduled for demolition. *Id.* at ¶ 25. Plaintiffs alleged police caused over $40,000 in damage and members of Plaintiff Jordan's family (mainly Plaintiff Williams) had to secure the money for restoration. *Id.* at ¶ 28. Plaintiffs further alleged that Defendants failed to take any action, disciplinary or otherwise, in response to complaints. *Id.* at ¶¶ 31-38. They brought claims based on the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and a state law claim of intentional infliction of emotional distress.

Plaintiff Jordan passed away after the filing of this suit. *See* Doc. 21 (Notice – Suggestion of Death). The Court subsequently held a Case Management Conference at which it explained at any claims on Plaintiff Jordan's behalf must therefore be brought by the proper representative of her Estate. The Court granted leave to Plaintiffs to amend their Complaint on or before February

21, 2022 in order to name proper parties to the case: new defendants and, should the Estate of Ms. Jordan wish to pursue her claims – the Estate (through counsel) as a substitute Plaintiff.

On February 15, 2022, Plaintiff Williams filed an Amended Complaint, asserting claims only on his own behalf. *See* Doc. 29. The Amended Complaint continues to assert claims based on the above-described facts: the search of the backyard of 2472 Lawrence, the subsequent residential search pursuant to warrant, and the reporting of the residence to the Land Bank for demolition.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and have a duty to police the boundaries of their jurisdiction. District courts have the authority to dismiss *sua sponte* a non-prisoner *pro se* complaint for lack of jurisdiction "at any time" where the filing fee has been paid if "the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). In other words, a district court may *sua sponte* dismiss a complaint under Rule 12(b)(1) where it lacks "the legal plausibility necessary to invoke federal subject matter jurisdiction." *Id.* at 480.

## DISCUSSION

Plaintiff Williams's Amended Complaint asserts claims under 42 U.S.C. § 1983 based on the Fourth and Fourteenth Amendments, as well as a claim of intentional infliction of emotional distress under Ohio law. For the reasons set forth below, the Court finds Plaintiff's federal claims must be dismissed under *Apple v. Glenn*, and declines to exercise supplemental jurisdiction over his purported state law claim. Further, the Court denies as moot Ms. Colbert's motions, and all other pending motions.

A plaintiff cannot sue based on "a generalized grievance against [assertedly] illegal government conduct[.]" *United States v. Hays*, 515 U.S. 737, 743 (1995). To state a claim under

3

42 U.S.C. § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

A cause of action under Section 1983 is "entirely personal to the direct victim of the alleged constitutional tort," and thus "only the purported victim . . . may prosecute a section 1983 claim." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted); *see also Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984) (a cause of action under Section 1983 "is a personal action cognizable only by the party whose civil rights ha[ve] been violated"). In other words, an individual typically cannot bring suit under Section 1983 based on violations of another person's constitutional rights. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Further, "no cause of action may lie under section 1983 for emotional distress . . . or any other consequent collateral injuries allegedly suffered personally by [a] victim's family members." *Claybrook*, 199 F.3d at 357; *see also Craft v. Ohio Dep't of Rehab.*, 2015 WL 2250667 at *2 (N.D. Ohio) ("Family members [acting individually], however personally affected or aggrieved, may not recover for the violation of their loved ones' civil rights under 42 U.S.C. § 1983."). "Those kinds of injuries are appropriately raised in a state tort law cause of action." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 615 (6th Cir. 2010).

Here, Plaintiff brings claims under the Fourth and Fourteenth Amendments based on actions taken at his grandmother's home. Specifically, he summarizes his claims as follows:

> Plaintiff Williams . . . allege[s] the following reckless and callous indifference in the violation of his constitutional rights, under the Fourth and Fourteenth Amendments of the United States Constitution by the named defendants while at all times acting under the color of state law, regarding *any and all events* involving:

4

>(1) the gathering and/or utilizing the unlawfully obtained evidence, from the warrantless search of the backyard and back-porch of 2472 Lawrence St. Toledo, Ohio, on or about July 4, 2019, for the sole purpose to establish probable cause to obtain he search warrant for the residence of 2472 Lawrence; (2) the search of the residence of 2472 Lawrence on or about September 11, 2019; and (3) the reporting the residence of 2472 Lawrence to the land bank for demolition: i.e., asserting that the house was unfit for habitation; as a direct result of the *excessive damages caused by the defendants on or about 09/11/2019*.

(Doc. 29, at 3) (emphasis in original).

Plaintiff thus asserts challenges to the warrantless search of the backyard/porch, and to the damage caused by execution of the subsequent warrant-based search.

To challenge the initial search of the backyard, Plaintiff must allege he had a reasonable expectation of privacy that was violated. The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." It is a "personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "In order to claim the protection of the Fourth Amendment, [one] must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)).

Throughout his Amended Complaint, Mr. Williams makes clear that 2472 Lawrence was Ms. Jordan's residence. *See generally* Doc. 29 (referring to the property as, e.g., "Ms. Jordan's residence", or "his grandmother's home", "Plaintiff Williams' maternal grandmother['s] house"). Plaintiff also refers to the property as his residence only in the past tense. *See* Doc. 29, at 40 n.74 ("This was my childhood home . . ."). Plaintiff does not claim he had any personal reasonable

5

expectation of privacy that was invaded by either search. As such, he lacks standing to object to the search of the back yard / porch. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003) ("To assert a Fourth Amendment violation, [plaintiff] must show that the government's action in some way invaded his own reasonable expectation of privacy.") (describing issue of standing to object to a search in context of a § 1983 action).

Plaintiff also seemingly challenges the execution of the residential search warrant as unreasonable based on the level of destruction. But again, the claim is not his to personally assert. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Damage to one's property as the result of a search can certainly constitute a "meaningful interference" with one's possessory interests. *See Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("The damage to Bonds' house, which included broken doors, mutilated vinyl siding, a cracked commode, holes in walls, broken dishes, and trampled personal belongings, clearly rises to the level of a 'meaningful interference'.") "The Fourth Amendment protects against a seizure of property even if it occurs in a context in which privacy or liberty interests are not implicated." *Id.* Here, however, Plaintiff asserts no claim of ownership to the home or the possessions contained therein that were allegedly damaged. As he has not alleged any meaningful interference with *his own* interest, this claim also has no legal basis.

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require [the Court] to conjure up unpled allegations", *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979). Even liberally construed, *see Haines*, 404 U.S. at 520, the Amended Complaint does not contain allegations reasonably suggesting Plaintiff Williams has a legally

6

plausible federal claim. Plaintiff's claims under 42 U.S.C. § 1983 are, in essence claims based on someone else's rights; they are therefore legally implausible and subject to dismissal under *Apple v. Glenn*.

State Law Claims

Plaintiff also brings a claim for intentional infliction of emotional distress based on the facts asserted in the Amended Complaint. Such a claim arises – if at all – only under state law. As the Court has found Plaintiff Williams' federal claims must be dismissed, it exercises its discretion to decline to exercise supplemental jurisdiction over any remaining state law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

Requests for Extension of Time

At the November 30, 2021 case management conference, this Court granted an extension to February 21, 2022 for Plaintiffs to file an Amended Complaint listing proper parties. *See* Doc. 22. This was, in part, because Plaintiff Jordan passed away subsequent to the filing of this suit. *See* Doc. 21 (Notice – Suggestion of Death). Federal Civil Rule 25 provides

> (1) **Substitution if the Claim Is Not Extinguished**. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

On January 24, 2022, the Court granted Plaintiff Williams's Motion to Amend and therein reiterated that "should an Amended Complaint asserting Ms. Jordan's claims (with proper

7

representation) not be filed on or before February 21, 2022, those claims will be dismissed without prejudice." (Doc. 28, at 3).

As this Court previously explained, an individual cannot represent another individual *pro se*. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct *their own cases personally* or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.") (emphasis added); *Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (because "pro se" means to appear on one's own behalf, a person may not appear pro se on another person's behalf in the other's cause of action"). Nor can the legally appointed personal representative of an estate prosecute an action *pro se* on behalf of the estate; they must do so through counsel. *See Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015).

No Motion for Substitution has been filed, but on February 18, 2022, Mary Colbert filed a request for "continuance of this case" due to her appointment as executor of Ms. Jordan's estate and needing time to obtain counsel. (Doc. 32). She filed a second such motion on April 8, 2022. (Doc. 38). Ms. Colbert, as a *pro se* administrator of an estate cannot properly file motions on the Estate's behalf. However, in light of her filings, the Court has delayed taking action. It is now May 11, 2022. Plaintiff Jordan's Estate has had ample time – over five and a half months from the Notice of Suggestion of Death (and over 60 days from the first request for an extension) – to retain an attorney. Because the Estate has not done so, Plaintiff Jordan's claims, as raised in the original complaint in this case (Doc. 1), are dismissed without prejudice for failure to prosecute. Fed. R. Civ. P. 41(b); *see also* Doc. 28, at 3 (warning claims would be dismissed if the Estate did not appear with counsel).

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff Williams's claims as asserted in the Amended Complaint (Doc. 29) are DISMISSED pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); and it is

FURTHER ORDERED that Plaintiff Jordan's claims – as raised in the original Complaint (Doc. 1) – are DISMISSED WITHOUT PREJUDICE for failure to prosecute; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

                                                                        s/ *James R. Knepp II*
                                                                        UNITED STATES DISTRICT JUDGE